IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| KIMORA WASHINGTON, as administrator of the Estate of KEVIN FORD, | ) ) ) ) | CIVIL ACTION FILE 4:24-CV-00081-CDL |
| Plaintiff, | ) ) | |
| v. | ) ) | JURY TRIAL DEMANDED |
| GWR MANAGEMENT, LLC AND GWR FLAT ROCK PARTNERS, LLC, | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR PROTECTIVE ORDER AND TO QUASH PLAINTIFF'S SUBPOENA TO COMPLETE STORAGE SOLUTIONS, LLC

COME NOW GWR MANAGEMENT, LLC ("GWR Management") and GWR FLAT ROCK PARTNERS, LLC ("GWR Flat Rock") (collectively "Defendants"), and hereby file their Memorandum in Support of Emergency Motion for Protective Order and to Quash Plaintiff's Subpoena to Complete Storage Solutions, LLC and show this Court as follows:

## I.    INTRODUCTION

In submitting this Motion, Defendants move this Court to stop Plaintiff from improperly attempting to conduct destructive testing on Defendant GWR Flat Rock's property, a cooking range and oven mitt, that are evidence in this matter. Plaintiff

presented Defendants with a protocol indicating the destructive testing that she wished to perform on the range and oven mitt. Defendants responded by voicing their concerns and asking, *inter alia*, the purpose of this testing and whether there were alternative non-destructive means to conduct this testing, such as the use of an exemplar. These questions were rebuffed, and Plaintiff stated that she would subpoena the range.

Although Plaintiff knows that the range is the property of defendant GWR Flat Rock, she has subpoenaed the owner of the storage facility in Covington, Georgia where the range in dispute remains, demanding that it transfer the range to a facility in Atlanta where the destructive testing she wishes to conduct will take place. Defendants ask the Court to quash the subpoena and to otherwise prevent Plaintiff from attempting to conduct destructive testing on the range for the reasons set forth below.

## II.     STATEMENT OF FACTS

A.     The Subject Fire.

This lawsuit concerns an October 12, 2022 fire ("Fire") that occurred at an apartment complex, The Trails at Flat Rock, located in Columbus, Georgia. (DE-20, Amended Complaint, ¶¶ 8-10). Plaintiff alleges that the fire originated on the third floor of Building A in apartment A-23 and spread to neighboring apartment A-24 resulting in the death of Mr. Kevin Ford. (*Id.* at 21). According to Plaintiff, the

2

sprinkler system in Building A was not properly installed, maintained, or functioning and Building A did not have adequate fire containment, fire-proofing, or fire-resistant materials in the space between units A23 and A24. (*Id.* at 14-15).

B.    Expert Discovery.

Plaintiff produced her expert disclosures in this matter on October 21, 2024. (Declaration of Robert J. Kozloski, III, Esq. ("Kozloski Decl."), ¶ 5). As part of her expert disclosures, Plaintiff identified Mr. Keith Bell as her origin and cause expert with respect to the Fire. (*Id.* at ¶ 6). According to Mr. Bell's report, "[t]he fire originated on the third-floor of building "A", rear right corner at apartment 23, at the cooking range along the south wall of the kitchen, right side of the elements. The cause of the fire is more probable than not with a degree of scientific certainty the result of careless use of cooking materials." (*Id.* at Ex. A, Bell Report, p. 5). Plaintiff also retained Mr. Frank Hagan to provide engineering support to Keith Bell, CFI to determine the origin and cause of the fire. (*Id.* at ¶ 7, Ex. B, Hagan Report, p. 2). According to Mr. Hagan's report, "the fire originated in Apartment A23 at or near the range cooktop," for the grounds expressed by Keith Bell. (*Id.* at Ex. B, Hagan Report, p. 4; *also see* Deposition of Frank Hagan, p. 158).

Upon information and belief, both Mr. Hagan and Mr. Bell visited the scene of the Fire on at least two occasions – on February 1, 2023 and again on March 23, 2023. (*Id*. at ¶ 8). During these visits, they were able to observe the range in question

and an oven mitt that was found in the kitchen of A23. (*Id*. at ¶ 9). Upon information and belief, at the March 23, 2023 site inspection, they were also allowed to not only photograph the range and mitt, but were also allowed to sift through and inspect the debris that was on top of the range as well as the range top and its back panel above the range top. (*Id*. at ¶ 10). Below is a photograph of the range prior to the debris removal:



Photo 57: Free-Standing Electric range prior to debris removal

(*Id*. at Ex. D, Smith Report, p. 29). Upon information and belief, they were also allowed to reposition the microwave that was originally above the range and had fallen down and replace it to its original location above the range for their testing purposes. (*Id*. at ¶ 11). It was at this time that Mr. Hagan and Mr. Bell made the

4

determination that the origin of the fire was a saucepan on the left side of the range top that was full of oil or other flammable liquid which caught fire in the kitchen of A23. (Deposition of Keith Bell, 221:11-14; Deposition of Frank Hagan, 93:25; 94:1-35; 158:1-25). The subject range and oven mitt in question were subsequently removed from the Property in approximately March of 2023, and Defendants placed their items in storage at Complete Storage Solutions, LLC in Covington, Georgia. (*Id.* at ¶ 12).

In light of Plaintiff's experts' origin and cause determination, Defendants scheduled, in coordination with Plaintiff's availability, the testing of the saucepan that was also found in the kitchen of A23. (*Id.* at ¶ 13). Accordingly, on January 13-14, 2025, testing was performed on the saucepan in question to determine its pre-fire contents and whether it contained the trace of any ignitable liquids or fatty acids, such as cooking oil. (*Id.* at ¶ 14). After the test was performed, it was determined that the saucepan tested negative for fatty acids, ignitable liquids, and foodstuffs. The only trace elements located in the saucepan were of burnt wood from fall down. (*Id.* at ¶ 15, Ex. C).

Given that Plaintiff's experts alleged that the Fire's origin was the saucepan on the range and was the result of a cooking fire in A23, in January 2025, Defendants also requested a joint exam of the range, cooking mitt, and other items that were found at the fire scene and ultimately stored by Defendants at their expense. (*Id.* at

¶ 16).  At no time prior to submitting her experts' reports did Plaintiff ever request any examination or testing of the range and oven mitt. (*Id*. at ¶ 17).  After the submission of Plaintiff's expert reports, Defendants proposed and Plaintiff and agreed to have their respective experts inspect, photograph, test, and otherwise observe the range and other saved items, including the oven mitt that were located in apartment A23 at the time of the Fire. (*Id*. at ¶ 18).  During this joint-inspection, the parties' experts all agreed to wipe down the range in question to remove all dirt, debris, residue and ash from the Fire. (*Id*. at ¶ 19).  True and correct copies of photographs of the range before and after this cleaning are displayed below:

**Before Cleaning**:



**After Cleaning**:



(*Id*. at ¶ 20).  After the joint inspection on January 15, 2025, Defendants produced

their expert disclosures on January 17, 2025. (*Id*. at ¶ 21).  Defendants' origin and

cause expert, Tim Smith, opined as follows with respect to the burn pattern on the

back of the range:

> During the scene examination, an oven mitt was found within the debris
> along the top of the cooking surface. The oven mitt was examined and
> found that the underside of the oven mitt had fire damage. Also, noted
> to the rear of the range just above where the oven mitt was recovered,
> the back panel displayed signs from fire attack. During the examination
> of this area, it was found that fabric material from the oven mitt was
> adhered to the fire attack area explaining the burn pattern from the oven
> mitt falling from above and creating this pattern.

(*Id.* at Ex. D, Smith Report, p. 11). A true and correct copy of a photograph of the mitt on the back of the range with the fibers on the back of the range is below:



(*Id.* at ¶ 23). Mr. Smith also opined that it appeared from the burn patterns in the rest of apartment A23 that the Fire originated in or around the living room area and progressed into the kitchen as indicated in the photograph below:



Photo 44: Shows fire travel

(*Id.* at Ex. D, Smith Report, p. 21-22). This contradicts Plaintiff's experts' determination that the Fire's origin was on the top left burner of the range. (*Id.*).

The City of Columbus's fire investigator, Sergeant Collins, with the Columbus Fire Department, also shared the same reservations about the origin and cause of the Fire being a cooking pot igniting on the left side of the range. Indeed, during his deposition, he stated that the area with the greatest burn (which is usually the origin area) was the living room area. Ultimately due to the degree of destruction, Sergeant Collins concluded that he was not able to determine the origin and cause of the Fire pursuant to NFPA 921 standards and found that its origin and cause was undetermined. (*Id.* at Ex. E).

C.    <u>Plaintiff's Demand and Subpoena to Complete Storage Solutions, LLC.</u>

On January 27, 2025, Plaintiff's counsel sent an email to Defendants' counsel unilaterally informing them that Plaintiff would be conducting additional further destructive testing on the range and oven mitt on February 5-6, 2025. (*Id.* at ¶ 26). The proposed destructive testing was purportedly to be performed by Lisa Detter-Hoskins of Atlas Analytical Services, LLC pursuant to a proposed protocol attached to the January 27, 2025 email from Plaintiff's counsel. (*Id.* at ¶ 27, Ex. F).

This protocol unilaterally stated that the range and oven mitt would be picked up from Complete Storage Solutions, LLC in Covington, Georgia and transported by U-Haul trailer or truck to the Applied Technical Services lab in Marietta, Georgia. (*Id.* at Ex. F). Further, this protocol stated that the destructive testing would involve "cutting sections of the range cooktop back near the damaged area and away from the damaged area for metallurgical polishing to determine base metal, pain composition, and paint thickness, as well as any other surface materials/debris/damage." (*Id.*). This protocol also stated that the testing would involve "cutting sections of the cooktop surface in an area away from the back damage area for metallurgical polishing to determine base metal paint, composition, and paint thickness." (*Id.*). Finally, the protocol stated that the testing would involve "disassembling the oven mitt to determine construction – number of layers, composition of layers, any fire retardants (photo documentation of construction,

SEM/EDS and FTIR for composition)." (*Id.*). None of which has anything to do with Mr. Smith's opinions.

Defendants' counsel was concerned that the destructive testing proposed destroying key pieces of evidence. On January 31, 2025, they sent a letter to Plaintiff's counsel seeking clarity as to why the testing was necessary in an attempt to reach a good faith resolution. (*Id.* at ¶ 28, Ex. G). Defendants' counsels' letter raised various concerns such as whether there was a way to *inter alia*: obtain the sought testing in a way that was not destructive, utilize an exemplar, or to provide a stipulation that could solve the problem. Defense counsel also asked why the testing was requested so late in expert discovery after Plaintiff's experts had already opined that the fire started on top of the range of A23 and what in Defendants' experts' reports was the testing seeking to rebut, as only rebuttal experts could be selected at this stage of discovery. (*Id.* at Ex. G).

Plaintiff's counsel responded via a letter to Defendants' counsel dated February 3, 2025. (*Id.* at ¶ 29, Ex. H). In his letter, Plaintiff's counsel indicated that Defendants' counsels' letter "appears to be an improper attempt to illicit the mental impressions of counsel regarding expected use of any evidence obtained from this testing." (*Id.*). Among other things, Plaintiff's counsel's letter also unilaterally stated that the request was timely, that the testing pertained to purported aversion in Defendants' expert reports relating to burn patters on the range potentially being

caused by the oven mitt, and that the testing would not affect the integrity of the range or oven mitt. (*Id.*). Plaintiff's counsel then informed Defendants' counsel that he would simply subpoena Complete Storage Solutions, LLC for the pickup and testing of the range and oven mitt for February 11-12, 2025. (*Id.*). Complete Storage Solutions, LLC was subsequently served with the subpoena on February 5, 2025. (*Id*. at ¶ 30). The subpoena also included a slightly revised protocol that included, among other things, supposed approximations of the numerous portions of the range that would be cut from its surface. (*Id*. at Ex. H).

### III.    ARGUMENT AND CITATION TO AUTHORITY

A.    Standard for Motion for Protective Order.

Plaintiff's unilateral desire to perform invasive destructive testing on items its experts have inspected on numerous occasions over numerous years unquestionably requires protection by this Court. Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). However, "[a] party or any person from whom discovery is sought may move for a protective order" and, upon a showing of good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c).

*Mirchandani v. Home Depot, U.S.A., Inc.* sets forth factors some courts have looked at to balance the importance of preserving evidence against permitting

destructive tests of evidence. 235 F.R.D. 611, 614 (D. Md. 2006). These factors include (1) whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; (2) whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; (3) whether there are any less prejudicial alternative methods of obtaining the evidence sought; and (4) whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial. *Id.*

In the instant case, Plaintiff has served a subpoena on Complete Storage Solutions, LLC to obtain the range and oven mitt that are, according to Plaintiff, the key evidence in this lawsuit to perform substantial destructive testing by cutting numerous pieces off of them that will no doubt substantially prejudice Defendants. Additionally, given that the range has already been wiped down with all parties' experts' express consent, the chance for Plaintiff to obtain any probative evidence pertaining to the origin and cause of the Fire put forth by its experts has long passed since the range's condition has been substantially and forever changed. As such, any purported results from Plaintiff's requested destructive testing will not be reliable and will also further alter the range and oven mitt's general aesthetic due to the invasive cutting on the surface of the range. Defendants respectfully submit that this should not be permitted by this Court.

B.    <u>Plaintiff's Subpoena Is Procedurally Improper.</u>

As an initial matter, Plaintiff directed its subpoena to the wrong entity making it procedurally improper. The entity that Plaintiff served a subpoena on for the range and oven mitt, Complete Storage Solutions, LLC, does not own, maintain custody or control of the range and oven mitt since these items are the property of Defendants. Accordingly, Complete Storage Solutions, LLC cannot legally make a decision or determination as to what can or cannot happen to the range or oven mitt without Defendants' approval – much less allow for it to be deconstructivity tested by the Plaintiff.

In *Learning Connections, Inc. v. Kaufman, Englett & Lynd, PLLC*, a similar situation arose where a Plaintiff sent a subpoena to an employee of a non-party, Fifth Third Bank, N.A., requesting certain bank documents. 280 F.R.D. 639, 640 (M.D. Fla. 2012). Simply because the employee had access to the documents, the employee filed a Motion to Quash Subpoena or, in the alternative, Motion for Protective Order since the documents that the Plaintiff requested were not in her possession, custody, or control since those records belonged to Fifth Third Bank. *Id.* Based on this, the court found that the third-party was entitled to a protective order because it was undisputed that the documents sought by the plaintiff were not in the third party's possession, custody, or control. *Id.*

Here, Complete Storage Solutions, LLC was retained by Defendants to simply store various items pertaining to the fire such as the range and oven mitt. At no time did Defendants transfer their ownership of the items or provide the authority to make decisions about their property to Complete Storage Solutions, LLC. Thus, Complete Storage Solutions, LLC is under no legal obligation to comply with Plaintiff's subpoena since the items Plaintiff seeks to deconstructivity test are not in its possession, custody, or control. Instead, Plaintiff should have sent Defendants a notice to inspect the range and oven mitt – not Complete Storage Solutions, LLC.

C.    <u>Plaintiff's Request For Destructive Testing Does Not Rebut Any Argument Or Position Set Forth By Defendants' Experts.</u>

*1. Allowed Expert Rebuttal Testimony And Testing.*

This testing does not relate to any position that Defendants' experts have put forth in their expert reports and is thus improper. Complying with this Court's detailed January 6, 2025 Amended Scheduling Order, Defendants disclosed their experts by January 17, 2025 and Plaintiff must disclose her *rebuttal* experts by March 7, 2025. (DE 26, Order on Joint Motion to Amend Scheduling Order).  At this stage in litigation, Plaintiff may only provide expert testimony to rebut Defendants' experts' reports:

> Expert disclosures, including the disclosure of a rebuttal expert, must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D); Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 717 (11th Cir. 2019). **An expert may be used for rebuttal if the expert offers evidence that is "intended solely to contradict or rebut**

**evidence on the same subject matter identified by" the affirmative expert of another party.** Burger King Corp. v. Berry, No. 18-20435-CIV, 2019 WL 571483, at *2 (S.D. Fla. Jan. 8, 2019) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)) (emphasis added). A proposed rebuttal expert satisfies this standard as long as the information provided by the rebuttal expert repels the affirmative expert testimony of the other party.

*Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, No. 18-CV-63130, 2020 WL 1666763, at *3 (S.D. Fla. Apr. 3, 2020) (bold emphasis supplied).

*2. The Proposed Testing Is Not Properly Linked To Rebuttal Testimony.*

Here, no such evidence has been put forth by Defendants' experts that would warrant the destructive testing that Plaintiff requests. While Plaintiff attempts to hide behind the "attorney-work product/mental impressions" privileges as set forth in her attorney's February 3, 2025 letter, the purpose for this testing must be fleshed out so that this Court may make a determination about a balancing test allowing Plaintiff to proceed. Plaintiff's counsel's February 3, 2025 letter only makes illusive reference to Defendants' experts' Tim Smith and Rick Jones's reports. These experts submit that the fire came into the kitchen from the living room area. Mr. Smith's report includes numerous photographs such as the one included below that show burn patters of greater intensity in the living room and progressing into the kitchen area:



Photo 41: Shows fire travel from patio/living room

(Kozloski, Decl., Ex. D, Smith Report, p. 21). Accordingly, had the fire started in the kitchen, the burn patters would show greater intensity on the side of the wooden studs closest to the kitchen. However, in the photograph above, the wooden studs show greater burning on the side closest to the living room and not the kitchen.

Additionally, both of Defendants' experts also mention that the fabric found on the back of the range appears to be that from the oven mitt. Indeed, the fabric burn pattern on the back of the range was caused by the oven mitt falling down from a storage hook above the range and burning on top of the back panel.

The destructive testing that is sought by Plaintiff involves cutting numerous pieces of metal from not only the back panel but also the *top of the range* that has nothing to do with the fabric burn pattern on the back of the range. At the January 15, 2025 inspection, Plaintiff's own expert, Mr. Frank Hagan, even agreed that there appeared to be pieces of fabric from the oven mitt affixed to the top of the back panel where the burn patterns are located. (Declaration of Frederick O. Ferrand, Esq., ¶ 5). Therefore, there would be no reasonable need to further test the range and oven mitt to determine if the fabric was from the subject oven mitt. Curiously, if Plaintiff's testing were just about the oven mitt mentioned in Defendants' expert reports, then there would be no need to test the two additional areas on the range including far away on the top front of the range as included in Plaintiff's proposed protocol. (Kozloski Decl., Ex. H). However, it appears the reason for this testing goes well beyond the scope of simply testing for the oven mitt fibers as mentioned in Mr. Smith and Mr. Jones's reports.

Indeed, this testing appears to be a means for supplementing or recasting Plaintiff's experts' findings rather than rebutting any opinions or findings of Defendants' experts. "Notably, the proponent cannot conduct destructive testing only to bolster an expert opinion." *Mirchandani v. Home Depot, U.S.A., Inc.. .* 235 F.R.D. 611, 615 (D. Md. 2006). "Rather, use of the evidence sought through destructive testing must do more than strengthen an already established claim or defense." *Id.*;

*see also Dabney v. Montgomery Ward & Co., Inc.,* 761 F.2d 494, 498-99 (8th Cir. 1985) (declining to permit destructive testing to bolster an expert's opinion even where photographs could have preserved the evidence for the non-movant).

Plaintiff's protocol may shed light on her real motives for the destructive testing since it states its purpose is to "determine the base metal, paint composition, and paint thickness, as well as any other surface materials/debris/damage." This has nothing to do with anything in Defendants' expert disclosures and is not instructive of what information Plaintiff hopes to obtain or how it is relevant to this case. Again, nothing in Defendants' experts' reports talks about or even mentions base metal, paint composition, or paint thickness or anything else that would warrant rebutting with such destructive testing. Instead, this again appears to be Plaintiff's last-ditch attempt to save her experts' origin and cause theory by giving her another bite at the apple. Plaintiff has already put forth her theory, and this Court should not properly allow Plaintiff's last minute Hail Mary to recast her theory to the detriment and prejudice of Defendants.

D.    <u>Defendants Will Be Substantially Prejudiced By The Destructive Testing As It Will Damage Evidence Defendants Intend To Use At Trial.</u>

Finally, if the foregoing were not enough to preclude the destructive testing, Defendants simply desire to preserve the integrity of the range and oven mitt in their current state, since, according to Plaintiff and her experts, they are integral to the origin and cause of the fire. While destructive testing has been permitted in cases

where the item tested was reassembled so that the jury could observe it in its general condition, such destructive testing has not been permitted when the testing would deny the jury of the "full picture" of the evidence and all important physical evidence embedded within it. *Landi*, 2018 WL 3436790.; *Campbell*, 2013 WL 12092518, at *3. According to the protocol, the proposed testing is unnecessarily destructive and mandates the invasive cutting of numerous inches long sections of the range cooktop back near the damaged area and away from the damaged area. Not only will this invasive act change the general aesthetic of the range and the vital location of the burn patterns in relation to the heating element, but it is also likely to destroy or hamper a jury's ability to witness the complete scope of the damaged area resulting from the fire.

## IV.    CONCLUSION

For the forgoing reasons, Defendants request that this Court quash Plaintiff's subpoena to Complete Storage Solutions, LLC and enter a protective order preventing Plaintiff from performing destructive testing on the range and oven mitt or further altering it so that it may be preserved for trial.

This 10th day of February, 2025.

SWIFT CURRIE MCGHEE & HIERS, LLP

/s/ Robert J. Kozloski, III

Frederick O. Ferrand
Georgia Bar No. 259169
Robert J. Kozloski, III
Georgia Bar No. 548519
*Attorneys for Defendants*

1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
Tel:  404-874-8800
Fax: 404-888-6199
fred.ferrand@swiftcurrie.com
robert.kozloski@swiftcurrie.com

## CERTIFICATE OF CONFERENCE

Pursuant to Fed. R. Civ. P. 26(c)(1), this is to certify that undersigned counsel attempted in good faith to resolve the discovery dispute that is the subject of this Motion on January 31, 2025. Unfortunately, the parties were unable to reach an amicable resolution.

This 10th day of February, 2025.

SWIFT CURRIE MCGHEE & HIERS, LLP

*/s/ Robert J. Kozloski, III*
Frederick O. Ferrand
Georgia Bar No. 259169
Robert J. Kozloski, III
Georgia Bar No. 548519
*Attorneys for Defendants*

1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
Tel:  404-874-8800
Fax: 404-888-6199
fred.ferrand@swiftcurrie.com
robert.kozloski@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION FOR PROTECTIVE ORDER AND TO QUASH PLAINTIFF'S SUBPOENA TO COMPLETE STORAGE SOLUTIONS, LLC** with the Clerk of Court, by e-filing same using the CM/ECF Filing System, which will automatically send e-mail notification of said filing to the following attorneys of record:

William Maxwell Compton, Esq.
Morgan & Morgan
200 Stephenson Ave, Suite 200
Savannah, Georgia 31405
mcompton@forthepeople.com

This 10th day of February, 2025.

SWIFT CURRIE MCGHEE & HIERS, LLP

*/s/ Robert J. Kozloski, III*
Robert J. Kozloski, III
Georgia Bar No. 548519
*Attorney for Defendants*

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404-874-8800
Fax: 404-888-6199
robert.kozloski@swiftcurrie.com

4918-8767-2855, v. 2