IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| KIMORA WASHINGTON, as Administrator of the Estate of KEVIN FORD,<br><br>Plaintiff,<br><br>v.<br><br>GWR MANAGEMENT, LLC and GWR FLAT ROCK PARTNERS, LLC<br><br>Defendants. | CIVIL ACTION FILE NO. 4:24-cv-00081-CDL<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO FOR PARTIAL SUMMARY JUDGMENT AS TO KEVIN FORD'S LEGAL STATUS**

COMES NOW, Plaintiff KIMORA WASHINGTON, as Administrator of the Estate of Kevin Ford, by and through undersigned counsel, and files this Response in Opposition to Defendants' Motion for Partial Summary Judgment as to Kevin Ford's Legal Status [Doc. 51], showing this Honorable Court as follows:

**I.     PERTINENT FACTUAL BACKGROUND**

The October 12, 2022 fire (the "Fire") at issue in this case occurred in Building A ("Building A") of the Trails of Flat Rock apartment complex located at 6254 Warm Springs Rd., Columbus, Georgia 31909 (the "Property"). ([Doc. 51-2] at ¶ 1; [Doc. 53-2]). Building A was a three-story, multi-family apartment building in which each apartment had its own kitchen and bathrooms. ([Doc. 20] and [Doc. 24] at ¶¶ 11-12).

At all times relevant hereto, Building A had an automatic sprinkler system. ([Doc. 68-1] March 11, 2024 30(b)(6) Deposition of GWR Management, LLC ("Erwin March 2024 Depo.") 86:13-21). The sprinklers for the system are located inside the individual apartment units. Id.

- 1 -

Prior to the Fire, Defendant GWR Management retained Acom Fire Solutions ("Acom") to inspect the automatic sprinkler system in Building A. (GWR Management's Responses to Plaintiff's Request for Admissions ("GWR RFA Responses"), **Exhibit A**, at ¶ 1). On October 26, 2021, Acom inspected the sprinkler system in Building A and found that Apartment A23 had seven sprinklers that were painted and an additional two sprinklers that were "loaded."[1] (Id.; Erwin March 2024 Depo. 106:10-15; Acom Building A Inspection Report, **Exhibit B**).

The next day, Acom sent GWR Management a proposal to replace the painted sprinklers and clean the loaded sprinklers. (Acom Proposal, **Exhibit C**). GWR Management did not accept Acom's proposal. GWR Management did not replace any of the sprinklers in Apartment A23 between the date of the Acom inspection (October 26, 2021) and the date of the Fire. (GWR RFA Responses at ¶¶ 3, 4; *see generally,* Erwin March 2024 Depo. pp. 106-109). GWR Management did not have a qualified professional clean any of the sprinklers in Apartment A23. (*See generally,* Erwin March 2024 Depo. pp. 106-109). Instead, allegedly, GWR Management had their in-house maintenance personnel clean the sprinklers, but there are no documents indicating that this work was actually done, and GWR Management cannot identify the specific sprinklers the maintenance personnel allegedly cleaned. Id.

Plaintiff contends that a sprinkler in the kitchen of Apartment A23 failed to operate as intended during the Fire which allowed the Fire to spread from the kitchen of Apartment A23 to Apartment A24 resulting in the death of Kevin Ford. (*See* [Doc. 45-3 at p. 4]; [Doc. 46-3] at p. 29). Plaintiff's experts Frank Hagan and Gregory Gorbett opine that the failure of the kitchen sprinkler in Apartment A23 was likely the result of the sprinkler being painted or loaded. Id.

---

[1] A "loaded" sprinkler is one that has debris in it that should not be there. (Hagan Depo. 97:18-25, 98:1-2).

At the time of the Fire, Anthony Thorpe and Kevin Ford resided in apartment A24—adjacent to Apartment A23. (*See* Thorpe Apartments Diagram, **Exhibit D**). Thorpe had been a resident in at the Property since April or May 2019. ([Doc. 52-3] ("Thorpe Depo.") 24:24-25, 25:1-2). Ford moved into Apartment A24 approximately five months before the Fire and resided there continuously until his death in the Fire. (Id. at 51:4-8). Thorpe did not add Ford to the lease for Apartment A24 prior to the Fire. (*See* Thorpe Depo. 49:14-18). While the lease had a provision that purported to require all occupants of an apartment to be listed on the lease, Defendant GWR Management did not enforce that policy itself, but rather left enforcement up to the residents at the Property. ([Doc. 52-1] April 25, 2025 Deposition of GWR Management, LLC ("Erwin April 2025 Depo.") 144:20-25, 145, 146:1-2). GWR Management did not actively seek to determine if there were occupants in the apartments that were not on the lease. (Id. 145:21-23).

## II.     ARGUMENT AND CITATION TO AUTHORITY

### A.     Summary Judgment Standard of Review

Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party establishes that it is entitled to judgment as a matter of law on the undisputed facts. Fed. R. Civ. P. 56(c); Georgia State Conference, etc. v. Fayette County Board of Commissioners, 775 F.3d 1336, 1343 (11th Cir. 2015).

As to factual disputes, the court must determine whether the evidence, viewed in the light most favorable to the moving party, shows that "there is no genuine dispute as to any material fact . . .". FED. R. CIV. PRO. 56(a); Fayette County Board of Comm., 775 F.3d 1336, 1343 (11th Cir. 2015); Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir 2008) ("all reasonable doubts about the facts [must be resolved] in favor of the non-movant."). A genuine dispute of material fact exists if a reasonable jury could find for the non-moving party. Bohanan v.

Paulding County, Georgia, 479 F.Supp.3d 1345, 1355 (N.D. Ga. 2020). If a genuine dispute of material fact exists, then summary judgment is improper. Id. at 1356 ("any genuine disputes about the material facts must go to a trial."). "Summary judgment is such a lethal weapon, depriving a litigant of a trial on the issues, caution must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment." Furcron v. Mail Centers Plus, LLC, 843 F.3d 1295, 1303 (11th Cir 2016).

Furthermore, even if there are no genuine disputes of material fact, summary judgment is not permitted unless the moving party can establish that it is entitled to judgment as a matter of law on those undisputed facts. FED. R. CIV. PRO. 56(a). "Judgment as a matter of law can be entered only when the evidence favoring the movant is so one-sided as to be of overwhelming effect." Fiveash v. Allstate Ins. Co., 603 Fed. App'x 773, 775 (11th Cir. 2015) (citation omitted).

**B.    Defendants' Fire Safety Duties**

In the context of fire safety, landowners owe certain duties to all persons, regardless of their relationship to the property. Under Georgia law, that is especially the case where the property at issue is a multi-family residential building three or more stories in height, such as Building A. In that circumstance, the landowner has heightened obligations pursuant to O.C.G.A. § 25-2-13(c) which provides that:

> Every person who owns or controls the use of any building, part of a building, or structure described in paragraph (1) of subsection (b) of this Code section, which, because of floor area, height, location, use or intended use as a gathering place for large groups, or use or intended use by or for the aged, the ill, the incompetent, or the imprisoned, constitutes a special hazard to property or **to the life and safety of persons** on account of fire or panic from fear of fire, must so construct, equip, maintain, and use such building or structure as to **afford every reasonable and practical precaution and protection against injury** from such hazards.

O.C.G.A. § 25-2-13(C) (emphasis supplied).[2]

Similarly, the Georgia Commissioner of Insurance and Fire Safety (hereinafter, "Insurance Commissioner") promulgated the Rules and Regulations for the State Minimum Fire Safety Standards (hereinafter, "Georgia Minimum Fire Standards"), the purpose of which is "to establish the state minimum fire safety standards and requirements **for the prevention of loss of life** and property from fire, panic from fear of fire, explosions or related hazards in all buildings, structures and facilities with the exception of [buildings not at issue here]." Ga. Comp. R. & Regs. 120-3-3-.01 (emphasis supplied).[3] The Georgia Minimum Fire Standards define a "fire hazard" as a "condition . . . that . . . can cause . . . a fire out of control . . . that the authority having jurisdiction determines to be a risk to persons, to property, or to the health, safety, and or welfare of the jurisdiction." Ga. Comp. R. & Regs. 120-3-3-.03(11).

Pursuant to Ga. Comp. R. & Regs. 120-3-3-.04, the Insurance Commissioner adopted various fire and life safety codes (International Fire Code, Life Safety Code, etc.) with modifications specific to Georgia. Ga. Comp. R. & Regs. 120-3-3-.04. These code sections, and the Georgia modifications thereto, contain several examples of their intended applicability to the protection of persons generally, as opposed to specific classes of persons. Ga. Comp. R. & Regs. 120-3-3-.04(3) (adopting International Fire Code the stated purpose of which is "to establish the minimum requirements . . . for providing a reasonable level of life safety . . .") (International Fire Code § 101.3, **Exhibit F**); Ga. Comp. R. & Regs. 120-3-3-.04(3)(k)(2) (modification to

---

[2] O.C.G.A. § 25-2-13(b)(1) defines "any building three or more stories in height and used as a residence by three or more families, with individual cooking and bathroom facilities for each family" as constituting a "special hazard to property or to the life and safety of **persons** on account of fire or panic from fear of fire."  O.C.G.A. § 25-2-13(b)(1) and (b)(1)(B).

[3] The portions of the Georgia Minimum Fire Standards cited herein are citations to the versions of the standard in effect at the time of the Fire.  Those versions are attached hereto as **Exhibit E**.

International Fire Code, Chapter 11 (Existing Buildings) providing that "[t]he intent of this chapter is to provide a minimum degree of fire and life safety to **persons occupying buildings** . . .") (emphasis supplied); Ga. Comp. R. & Regs. 120-3-3-.04(73) (adopting NFPA 101, Life Safety Code, the purpose of which is to address "those construction, protection, and occupancy features necessary to minimize danger to life from the effects of fire," and "to provide minimum requirements . . . for safety to life from fire.") (Life Safety Code §§ 1.1.2, 1.2, **Exhibit G**).

Of particular importance here is the Insurance Commissioner's adoption of NFPA 25 – Standard for the Inspection, Testing, and Maintenance of Water-Based Fire Protection Systems. Ga. Comp. R. & Regs. 120-3-3-.04(23); *see also* Rule 26 Expert Report of Frank Hagan [Doc. 45-3] at p. 3-4. NFPA 25 provides that its purpose is "to provide requirements that ensure a reasonable degree of **protection for life** and property from fire through minimum inspection, testing, and maintenance methods for water-based fire protection systems." NFPA 25 § 1.2.1 (emphasis supplied).[4] NFPA 25 requires property owners to replace sprinklers that show evidence of painting or loading. NFPA 25 § 5.2.1.1.2(5), (6). NFPA 25 requires that all work done on a sprinkler system be conducted by qualified professionals, and that building owners maintain records for all inspections, tests, and maintenance of the system. NFPA 25 §§ 4.1.1.2, 4.3.1.

> i. *Pursuant to O.C.G.A. § 25-2-13(c), Defendants Owed Ford a Duty to Provide Every Reasonable and Practical Precaution and Protection Against Injury from Fire.*

Defendants owed a duty to provide every reasonable and practical precaution and protection against injury from fire to all persons in Building A at the time of the Fire. A plain reading of O.C.G.A. § 25-2-13(c) compels that conclusion. The statute provides that its intended

---

[4] The sections of NFPA cited herein are citations to the 2017 Edition of that standard, which was the version in effect at the time of the Fire. versions of the standard in effect at the time of the Fire. The NFPA 25 sections cited herein are attached hereto as **Exhibit H**.

goal is to protect the life and safety of persons from injury caused by fire. The statute does not limit itself to the protection of only those persons that can be classified as an invitee (or any other class of persons). Rather, O.C.G.A. § 25-2-13(c) mandates that owners of buildings that come within its scope must provide every reasonable and practical precaution and protection against injury from fire for the life and safety of all persons in the subject building.[5] This reading of O.C.G.A. § 25-2-13(c) is consistent with the Georgia Minimum Fire Standards which were promulgated for the broad purpose of preventing the loss of life from fire. Ga. Comp. R. & Regs. 120-3-3-.01.

Here, it is undisputed that Building A was a three-story building that contained three or more apartments that each had their own kitchen and bathrooms. ([Doc. 20] and [Doc. 24] at ¶¶ 11, 12). As such, there is no dispute that Building A was subject to O.C.G.A. § 25-2-13(c). Likewise, there is no dispute that Ford was in Building A at the time of the Fire and had been residing in Building A for several months prior to the Fire. (Thorpe Depo. 51:4-8; [Doc. 53-2]). Accordingly, Defendants owed him a duty to use every reasonable and practical precaution and protection to prevent injury caused specifically by fire. That duty encompasses the obligation to maintain the sprinkler system in Building A for the purpose of preventing injury by fire. Injury by fire as the result of a defectively maintained sprinkler system is exactly what is at issue in this case.

Defendants are thus not entitled to judgment as a matter of law that their only duty to Ford was to refrain from causing willful and wanton injury. Instead, Defendants owed Ford a

---

[5] While no court applying Georgia law has addressed this issue, courts from other states have concluded that fire codes are not limited to the protection of only certain classes of persons present in a building. Shump v. First Continental–Robinwood Assoc., 71 Ohio St.3d 414, 644 N.E.2d 291 (1994) ("[t]here is no doubt that the purpose of this fire code was to protect **any individual in an apartment** from the risks created by a fire.") (emphasis supplied); Hoagland v. Gomez, 290 N.J. Super. 550, 556, 676 A.2d 187, 190 (App. Div. 1996) (adopting same).

duty to use reasonable and practical precaution and protection to avoid injury by fire. For this reason, Defendants' motion for partial summary judgment as to Ford's legal status must be **DENIED**.

> ii. *Defendants Owed Ford a Duty to Use Reasonable Care for the Protection of Life Through Minimum Inspection, Testing, and Maintenance of the Automatic Sprinkler System.*

Similarly, the Insurance Commissioner's adoption of NFPA 25 placed a duty on Defendants to inspect, test, and maintain the automatic sprinkler system in Building A for the purpose of protecting life from the risk of fire. Ga. Comp. R. & Regs. 120-3-3-.04(23); NFPA § 4.1.1 ("[t]he property owner or designated representative shall be responsible for properly maintaining a water-based fire protection system."). As was the case with O.C.G.A. § 25-2-13(c), NFPA 25 does not limit itself to the protection of certain classes of persons in a building. Instead, its stated purpose is broad—the protection of life. NFPA 25 § 1.2.1.

Thus, as the owners and operators of a building subject to NFPA 25, Defendants had a duty to comply with that standard to protect all persons in the building from the risk of injury by fire.[6] More specifically, Defendants had a duty to replace painted and loaded sprinklers in Apartment A23 for the purpose of protecting all persons in Building A, including Ford, from the risk of injury from fire. (NFPA 25 § 5.2.1.1.2(5), (6); [Doc. 45-3] at p. 2-3; Hagan Depo. at 161:12-25, 162:1-20). That duty applies to Plaintiff's claims against Defendants. Thus, for this reason also, Defendants' motion for partial summary judgment seeking a ruling that Defendants' duty to Ford was only to avoid willful and wanton injury must be **DENIED**.

---

[6] NFPA 25 applied to Building A at the time of the Fire. Ga. Comp. R. & Regs. 120-3-3-.01, .02 (providing that the Georgia Minimum Fire Standards apply to all buildings except certain one- and two-family residences not applicable here); Ga. Comp. R. & Regs. 120-3-3-.04(23); *see* [Doc. 45-3] at p. 2-3.

C. **Defendants Owed Ford a Duty to Repair the Automatic Sprinkler System Pursuant to O.C.G.A. § 44-7-14.**

   i. *Defendants Applied the Incorrect Statutory Scheme to their Motion for Partial Summary Judgment.*

In order to identify the duty owed by a landlord to a person on its property, a threshold determination must be made regarding the location of the dangerous condition on the property that caused injury to the person. The Supreme Court of Georgia explained the necessity of this determination in *Cham v. ECI Mgmt. Corp.* as follows:

> In many instances, a landlord's plot of land contains both areas that are possessed by the landlord (such as the common areas of an apartment complex) and areas possessed by tenants (*i.e.*, the apartments themselves). In such cases, a landlord's tort liability for a danger on its property is determined by the area where that danger lurks. If the dangerous condition that ultimately causes an injury is located in an area the landlord still possesses, then liability under O.C.G.A. § 51-3-1 *et seq.* applies, and O.C.G.A. § 44-7-14 does not apply by its own terms. Conversely, if the dangerous condition exists in an area possessed by the tenant (such as in the tenant's residence), then a landlord's liability derives from O.C.G.A. § 44-7-14 and not from O.C.G.A. § 51-3-1.

311 Ga. 170, 176, 856 S.E.2d 267, 273 (2021). Liability under O.C.G.A. § 51-3-1, *et seq.* and liability under O.C.G.A. § 44-7-14 are mutually exclusive. Id. at 177. The dangerous condition at issue in the instant case is a defective sprinkler inside Apartment A23. As such, O.C.G.A. § 44-7-14 is the controlling statute for general landlord liability, not O.C.G.A. § 51-3-1, *et seq.*[7] Defendants' motion for partial summary judgement is thus wholly premised on analysis of the incorrect statutory scheme (O.C.G.A. § 51-3-1, *et seq.*). *See* Cham, 311 Ga. at 180 ("liability under OCGA § 51-3-1 is based on defects occurring on landlord-possessed premises . . .").

Indeed, Defendants argue that "[t]he legal issues expressed in *Cham* present a model framework for this Court under the facts at bar," yet they ignore the all-important fact that the

---

[7] Defendants' duties pursuant to O.C.G.A. § 44-7-14 are general in the sense that they do not relate only to preventing injury caused by fire.

dangerous condition at issue in *Cham* was an unsafe common area parking lot controlled by the landlord, whereas this case involves a defective sprinkler inside a tenant-controlled apartment. This distinction is dispositive as to the statutory scheme under which Defendants' duties to Ford must be analyzed.  Defendants failed to address O.C.G.A. § 44-7-14 in their motion, and thus certainly did not establish that they owe no duty to Ford under that statute as a matter of law. For this reason alone, Defendants' motion for partial summary judgment on Ford's legal status must be **DENIED**.

    ii.  *Defendants Owed Ford a Duty to Repair Pursuant to O.C.G.A. § 44-7-14.*

Furthermore, pursuant to O.C.G.A. § 44-7-14, Defendants owed Ford a duty to repair the defective sprinkler in Apartment A23. O.C.G.A. § 44-7-14 provides as follows:

> Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

O.C.G.A. § 44-7-14. Importantly, "landlords still fully part with possession of leased premises when they retain limited entry or inspection rights for landlord-related purposes." *See e.g.*, Watts & Colwell Builders, Inc. v. Martin, 313 Ga. App. 1, 6, 720 S.E.2d 329 (2011). A landlord's retention of entry and inspection rights over leased portions of a building does not trigger liability pursuant to O.C.G.A. § 51-3-1. Id.

Under O.C.G.A. § 44-7-14, "if the landlord undertakes to inspect the property, he has a duty to repair any unsafe conditions which should have been discovered in the inspection." Id.; *see also* Bennett v. McPhatter, 359 Ga. App. 804, 807, 860 S.E.2d 105, 108 (2021) (landlord's knowledge of defect triggers duty to repair); Davis v. All-State Homes & Properties, 233 Ga. App. 60, 61 503 S.E.2d 331, 333 (1998) (notice to landlord of defect triggers duty to repair).

A landlord's duty to repair under O.C.G.A. § 44-7-14 extends to tenants and their "family, [] guests, servants, employees, or others present by [the tenant's] express or implied invitation . . .". Crossgrove v. Atlantic Coast Line R. Co., 30 Ga. App. 462, 118 S.E. 694 (1923); *see also* Flagler Co. v. Savage, 258 Ga. 335, 337, 368 S.E.2d 504, 506-07 (1988) (finding that a landlord's duty under O.C.G.A. § 44-7-14 applies to tenants "or to any one lawfully on the premises **by invitation of the tenant** . . .") (*quoting* Ross v. Jackson, 123 Ga. 657, 659, 51 S.E. 578 (1905) (emphasis supplied); Golf Club Co. v. Rothstein, 97 Ga. App. 128, 130, 102 S.E.2d 654, 656, aff'd, 214 Ga. 187, 104 S.E.2d 83 (1958) ("[m]embers of a tenant's family, his guests, servants, employees, or others present by his express or implied invitation, stand in his shoes, and are controlled by the rules governing the tenant as to the right of recovery for injuries arising from failure to keep the premises in repair.").

In *Cham*, the Supreme Court of Georgia referred to this principle as the "stands-in-the-shoes" proposition, meaning that the guests of a tenant stand in the shoes of the tenant for purposes of assessing a landlord's duty under O.C.G.A. § 44-7-14. Cham, 311 Ga. at 177-78. The "stand-in-the-shoes" rule remains good law following *Cham*. Id. at 178, n. 9.

In the instant case, it is undisputed that Acom placed Defendants on notice that seven painted sprinklers in Apartment A23 needed to be replaced and two other sprinklers in A23 needed to be cleaned due to loading. (GWR RFA Responses at ¶ 1; Erwin March 2024 Depo. 106:10-15; Acom Building A Inspection Report). Acom providing its report and proposal for work to Defendants triggered a duty to repair the defective sprinklers. That duty extended to the tenants in Building A, as well as guests and others who were in the building pursuant to the tenant's express or implied invitation.

At the time of the Fire, Ford was present in Building A pursuant to the express invitation of a tenant, Thorpe. (Thorpe Depo. 28:4-20, 29:6-24). Thus, Defendants owed Ford a duty, pursuant to O.C.G.A. § 44-7-14, to repair the defective sprinklers in Apartment A23. For this reason also, Defendants' motion for summary judgment as to Ford's legal status must be **DENIED.**

**D.        Alternatively, there is a Genuine Dispute of Material Fact as to Ford's Legal Status at the Time of the Fire.**

    *i. There is a Genuine Dispute of Material Fact as to Whether Defendants Enforced Their Purported "Named-Occupant" Policy.*

Alternatively, even if Defendants' general landlord duties to Ford come within the statutory scheme of O.C.G.A. § 51-3-1, *et seq.*, Defendants are still not entitled to partial summary judgment because there is a genuine dispute of material fact as to whether they enforced their "named-occupant" policy at the Property. The mere fact that a resident of an apartment is not listed on the lease for that apartment does not make the resident a trespasser for purposes of O.C.G.A. § 51-3-1, *et seq*. analysis. Cham, 311 Ga. at 183. If there is evidence that the landlord did not enforce the provisions of the lease purporting to require all residents to be listed on the lease, then a genuine dispute of fact arises as to the unlisted resident's legal status. Id.

In the instant case, while Thorpe's lease purports to require all residents to be listed on the lease, there is a genuine dispute of material fact as to whether Defendants enforced that lease provision. Indeed, GWR Management's corporate representative testified that enforcement of the "named-occupant" lease provision was the responsibility of the residents, not management. (Erwin Depo. 144:20-25, 145, 146:1-2). The corporate representative further testified that GWR Management did not actively seek to determine if there were occupants in the apartments that were not on the lease. (Id. 145:21-23). From this testimony, a reasonable juror could conclude

that Defendants chose not enforce the "named-occupant" provision of the leases at the Property, and that, therefore, Ford's status at the Property at the time of the Fire was something other than a trespasser. Accordingly, even if O.C.G.A. § 51-3-1, *et seq.* applies, Defendants are not entitled to judgment as a matter of law that Ford was a trespasser at the time of the Fire.

> ii. *There is a Genuine Dispute of Material Fact as to Whether Defendants Knew Ford Resided at the Property and Derived a Benefit from Him Residing There.*

An occupant of an apartment not listed on the lease may still be an invitee or licensee under O.C.G.A. § 51-3-1, *et seq.* if there is some evidence that the landlord was aware of the occupant residing in the apartment. Id.; Riggs v. Highland Hills Apartments, LLC, 334 Ga. App. 247, 253, 779 S.E.2d 20, 26 (2015). If the landlord derived a benefit from the occupant residing in the apartment, despite not being on the lease, then the occupant would be considered an invitee. Cham, 311 Ga. at 183 (finding that there was some evidence that occupant of an apartment not listed on the lease was an invitee because the landlord at least implicitly allowed him to reside there and derived a benefit therefrom in the form of the lessee renting a larger apartment).

Here, there is a genuine dispute of material fact as to whether Defendants knew Ford resided in Apartment A23. Thorpe testified that he told the maintenance supervisor for the Property, JB, that he was going to have Ford move into the apartment. (Thorpe Depo. 163:8-22). Indeed, Thorpe testified that JB had actual knowledge of Ford living in the apartment. (Id. 144:12-25, 145, 146:1-11, 163:8-11). JB's legal name is Calloway Barnes, and he was the maintenance supervisor at the Property prior to the Fire. ([Doc. 68-2] June 5, 2025 Rule 30(b)(6) Deposition of GWR Management, LLC ("King Depo.") 19:3-13, 67:9-11). JB lived at the Property prior to the Fire. (Id. 22:3-8). Thorpe testified that JB was the only maintenance person

that ever came to his apartment. (Thorpe Depo. 145:10-16). These facts are evidence from which a reasonable juror could conclude that Defendants knew Ford resided at the Property.

Furthermore, Thorpe also testified that he was at least partially motivated to invite Ford to move in with him by the fact that he had just gone through a divorce and had an extra bedroom in his apartment. (Id. 28:4-13). Thorpe further testified that if Ford had not taken him up on that offer, then he would not have kept a two-bedroom apartment. (Id. 30:1-3). This testimony is evidence from which a reasonable juror could conclude that Defendants derived a benefit from Ford's presence at the Property. *See* Cham, 311 Ga. at 183.

Given the foregoing, even if O.C.G.A. § 51-3-1, *et seq*. applies, there are genuine disputes of material fact as to Defendants' knowledge of Ford residing at the Property and whether Defendants derived a benefit from Ford's residency at the Property that preclude a finding as a matter of law that Ford was a trespasser at the time of the Fire.

### III.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment as to Kevin Ford's Legal Status must be **DENIED**.

This 18th day of August, 2025.

**MORGAN & MORGAN**

*/s/ Max Compton*
_____
William Maxwell Compton
Georgia Bar No. 380092
Counsel for *Plaintiff*

501 Riverside Dr.
Suite 1200
Jacksonville, FL 32202
(912) 443-1017 - Direct
(912) 443-1184 – Facsimile
MCompton@forthepeople.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| KIMORA WASHINGTON, as administrator of the estate of KEVIN FORD,<br><br>       Plaintiff,<br><br>v.<br><br>GWR MANAGEMENT, LLC and GWR FLAT ROCK PARTNERS, LLC<br><br>       Defendants. | CIVIL ACTION FILE NO.<br>4:24-cv-00081-CDL<br><br>JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO KEVIN FORD'S LEGAL STATUS** on counsel of record for the Defendants via statutory electronic service to fred.ferrand@swiftcurrie.com and robert.kozloski@swiftcurrie.com.

This 18th day of August, 2025.

                                                            **MORGAN & MORGAN**

                                                            */s/ Max Compton*
                                                            _____
                                                            William Maxwell Compton
                                                            Georgia Bar No.: 380092
                                                            Attorney for Plaintiff

501 Riverside Dr.
Suite 1200
Jacksonville, FL 32202
TEL: (912) 443-1017
FAX: (912) 443-1184
MCompton@forthepeople.com