IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

KIMORA WASHINGTON, as      *
administrator of the Estate of
KEVIN FORD.      *

     Plaintiff,      *

vs.      *      CASE NO. 4:24-cv-81-CDL

GWR MANAGEMENT, LLC and GWR      *
FLAT ROCK PARTNERS, LLC
     *

     Defendants.      *

     *

O R D E R

Defendants own and manage an apartment complex called The
Trails at Flat Rock in Columbus, Georgia. In October of 2022, a
fire occurred in Building A of the apartment complex. Kevin Ford,
who was staying in unit A-24 with tenant Anthony Thorpe, died in
the fire. Plaintiff, the administrator of Ford's estate, asserts
negligence claims against Defendants based on Ford's death,
alleging that Defendants' negligence caused Ford's death and pre-
death pain and suffering. Plaintiff intends to support these
claims by proffering evidence of negligent inspection, testing,
repair, and maintenance of the apartment's sprinkler system—
including expert testimony of Robert Bell, Keith Hagan, and Gregory
Gorbett. Defendants argue that the testimony of these three
experts should be excluded. Defendants also contend that they are
entitled to partial summary judgment on two narrow issues. For

the reasons explained in the remainder of this Order, the Court denies Defendants' motions to exclude the testimony of Bell, Hagan, and Gorbett (ECF Nos. 53, 54, & 55).[1]  Because that testimony, along with other evidence in the record, creates genuine factual disputes on the narrow factual issues raised by Defendants' summary judgment motions, Defendants' partial summary judgment motions (ECF Nos. 49 & 51) are also denied.

DISCUSSION

**I.    Defendants' *Daubert* Motions**

    **A.    Standard for the Admissibility of Expert Opinions**

Under Federal Rule of Evidence 702, the Court must serve as the gatekeeper "to keep out irrelevant or unreliable expert testimony."  *United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145 (1999) and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)).  "This gatekeeping role, however, is not intended to supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

---

[1] Defendant also moved to exclude the testimony of two other expert witnesses, but Plaintiff did not rely on their testimony in response to the present summary judgment motions, so the Court will address those motions to exclude (ECF Nos. 56 & 57) in a separate order.

*Id.* at 1282 (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999)).

In evaluating the admissibility of expert testimony under Rule 702, the Court must consider whether "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable . . .; and (3) the testimony assists the trier of fact . . . to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *City of Tuscaloosa v. Harcros Chems. Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Many cases, particularly those involving opinion testimony that relies on the scientific method, cite the traditional factors that courts should consider when determining whether an expert's methodology is sufficiently reliable: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential error rate of the technique; and (4) whether the technique is generally accepted in the scientific community." *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1327 (11th Cir. 2014) (per curiam). These factors, of course, represent a non-exhaustive list and "'do *not* constitute a definitive checklist or test.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 150). "While those factors may help in assessing the reliability of scientific or experience-based expert

testimony, the district court's 'gatekeeping inquiry must be tied to the facts of a particular case.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 150).

In its gatekeeping role, the Court's focus must be on the reliability of the testimony, not simply whether it fits within the narrow confines of lawyer-urged litmus tests. While "'each stage of the expert's testimony [must] be reliable, . . . each stage must [also] be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules.'" *Frazier*, 387 F.3d at 1262 (quoting *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 155 (3d Cir. 1999)). "Sometimes the specific [traditional] *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Id.* To allow the testimony to be considered by the jury, the Court must find that "it is properly grounded, well-reasoned, and not speculative." *Id.* (quoting Fed. R. Evid. 702 advisory comm. note (2000 amends.)).

B.   Robert Bell

The first expert Defendants seek to exclude is Robert Bell, a certified fire investigator with more than thirty years of experience performing private fire investigations and working for the Georgia State Fire Marshal's Office. Defs.' Mot. to Exclude Bell Ex. B, Bell Report 12, ECF No. 53-3 ("Bell Report"). He opines that the fire originated in the kitchen of apartment A-23. Defendants contend that Bell's testimony should be excluded

because he failed to collect sufficient facts and data during his investigation, and thus his opinion as to the cause and origin of the fire is unreliable under Rule 702.  To support this argument, Defendants cite specific portions of National Fire Protection Association 921, which is "a peer reviewed fire investigation guide that is the industry standard for fire investigation."  *United Fire and Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013).   Specifically, Defendants contend that Bell's testimony did not apply the scientific method outlined in NFPA 921.  Those steps are: (1) recognizing the need; (2) defining the problem; (3) collecting the data; (4) analyzing the data; (5) developing hypotheses; (6) testing the hypotheses; and (7) selecting the hypotheses. Defs.' Mot. to Exclude Bell Ex. E, NFPA 921, ECF No. 53-6 at 4-5 ("NFPA 921 §§ 4.3.1-.7").

Defendants' principal argument is that Bell did not collect sufficient facts or data when conducting his investigation into the origin and cause of the fire.  Bell, on the other hand, asserts that he did follow the NFPA 921 method because he: (1) obtained and reviewed a Columbus Fire & EMS initial accident report as well as the subsequent cause and origin report by Sgt. Charles Collins; (2) interviewed Anthony Thorpe, the surviving tenant of unit A-24; (3) interviewed the four firefighters who responded to the fire; (4) reviewed Ring Camera footage showing the fire traveling from unit A-23 to unit A-24; (5) reviewed a Matterport Scan of

unit A-23; (6) inspected the fire scene on two separate occasions; and (7) attended an investigative briefing detailing all investigative efforts that were taken. Bell Report 3. Defendants nonetheless argue that Bell should have collected additional facts and data for his investigation to be deemed "sufficient." The Court finds Defendants' arguments unpersuasive.

First, Defendants contend that Bell's investigation was insufficient because he ruled out the living room and balcony of A-23 as the fire's origin without collecting evidence and data from those areas. Defendants acknowledge that it was impossible for Bell to collect such evidence and data because there was nothing left of A-23's living room and balcony due to the fire damage. Bell examined burn patterns, Matterport scans, and photographs of the fire to rule out the living room and balcony as possible areas of origin. Bell Aff. Ex. A, Bell Rebuttal Report 5-6, ECF No. 72-21. Defendants nonetheless contend that Bell's conclusion is wrong because a Columbus Fire Department sergeant testified that when a great deal of fire damage destroys potential origin evidence, then the fire's origin often cannot be pinpointed. But that same Columbus Fire Department sergeant concluded that the "fire started in apartment 23." Defs.' Mot. to Exclude Bell Ex. A, Collins Report 6, ECF No. 53-2. Moreover, Bell explained all the evidence he did consider to rule out A-23's living room as the fire's place of origin. The Court finds that Bell's investigation

6

was not incomplete simply because he could not examine A-23's living room and balcony.

Next, Defendants argue that Bell's investigation was incomplete because he did not interview A-23's resident. During his investigation, Bell reviewed investigation reports that included statements A-23's resident made to investigators. Bell tried to call A-23's resident for an interview, but she did not answer. Bell Dep. 63:2-9, ECF No. 48-1. The Court is not persuaded that Bell's failure to follow up with A-23's resident under these circumstances renders his opinions unreliable.

Finally, Defendants assert that Bell's investigation was incomplete because he did not conduct testing on the contents of a visibly burned pot even though he concluded that the fire started on the range top of A-23 due to careless use of cooking materials. Bell testified that based on the burn damage and burn patterns on the pot, he knew something in the pot itself must have burned. *Id.* at 213:16-21. Bell further explained that in reaching his opinion, he considered evidence from the range top and examined burn patterns in the kitchen. Bell Report 5-6. Defendants did not establish that Bell's failure to test the pot's contents render his opinions unreliable.

In sum, the Court finds that Defendants' criticisms of Bell's analysis go to the weight of the evidence, not its admissibility. Defendants may certainly address these perceived weaknesses and

7

concerns in a thorough and sifting cross-examination. Defendants'
motion to exclude Bell (ECF No. 53) is denied.

      C.    <u>Frank Hagan and Gregory Gorbett</u>

      Defendants also seek to exclude the testimony of Frank Hagan
and Gregory Gorbett.  Hagan is a mechanical engineer with more
than thirty years of experience who specializes in fire and
explosion consulting.  Defs.' Mot. to Exclude Hagan Ex. B, Hagan
Report 7, ECF No. 54-3 at 7 ("Hagan Report").  Gorbett holds a PhD
in fire protection engineering and works as a professor in the
Fire Protection and Safety Engineering Technology Program at
Eastern Kentucky University.  Defs.' Mot. to Exclude Gorbett Ex.
B, Gorbett Report 5, ECF No. 55-3 at 5 ("Gorbett Report").  Both
are certified fire protection specialists and investigators.
Hagan and Gorbett concluded that a sprinkler in the kitchen of A-
23 failed to extinguish the fire on the stove top in the kitchen,
which allowed the fire to spread to the rest of the building.
Hagan Report 5; Gorbett Report 29.  Defendants argue that the
opinion testimony of Hagan and Gorbett should be excluded because
they relied on some of Bell's opinions in reaching their own.
Defendants contend that if Bell's testimony is excluded, then the
testimony of Hagan and Gorbett must be excluded too.

      As discussed above, the Court declines to exclude Bell's
testimony.  Federal Rule of Evidence 702 states that an expert's
testimony must be "based on sufficient facts or data."  Under Rule

702, an expert may rely on the reliable opinions of other experts. *See* Fed. R. Evid. 702 advisory comm. note (2000 amends.) ("The term 'data' is intended to encompass the reliable opinions of other experts."). Therefore, Hagan and Gorbett may rely on Bell's opinions in forming their own conclusions. Accordingly, the Court denies Defendants' motions to exclude the opinion testimony of Hagan and Gorbett (ECF Nos. 54 & 55).

## II. Defendants' Summary Judgment Motions

### A. Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

### B. Factual Background

Viewed in the light most favorable to Plaintiff, the record reveals the following facts.

The Trails at Flat Rock (the "Property") is an apartment complex that was built in 2007. The Property was equipped with an automatic sprinkler system and other fire suppression systems. In July of 2018, Defendants purchased the Property. After assuming ownership of the Property, Defendants contracted with Columbus Fire & Safety to conduct an annual review of the Property's fire containment system. Columbus Fire & Safety subcontracted out the work to Pro-Tech Fire Protection Systems, Inc., who inspected the automatic sprinkler system at the Property in 2019 and 2020. After Pro-Tech went out of business, Columbus Fire & Safety subcontracted out the work to Acom Fire Solutions, who inspected the automatic sprinkler system in October of 2021.

Acom's inspection revealed seven painted sprinkler heads and two loaded sprinkler heads for apartment unit A-23. Erwin Dep. 106:10-15 (Mar. 11, 2024), ECF No. 68-1 ("Erwin 2024 Dep."); Pl.'s Resp. Ex. B, Acom Inspection Report, ECF No. 69-4.[2] Acom sent Defendants a proposal to replace the painted sprinklers and clean the loaded sprinklers. Defendants did not hire Acom to do this work. Instead, Defendants had maintenance personnel visually identify and clean the seven painted sprinkler heads in A-23. Erwin 2024 Dep. 106:16-20; 107:11-16; 108:22-109:10, ECF No. 68-1. Defendants do not know what action maintenance personnel took

---

[2] A loaded sprinkler is one that has debris in it. Hagan Dep. 97:18-25; 98:1-2, ECF No. 48-3.

for the two loaded sprinkler heads in A-23.  *Id.* at 106:21-23.  No

documentation exists for this cleaning.  No work was performed on

the automatic sprinkler system in units A-23 and A-24 between

October 2021 and October 2022.  *Id.* at 108:11-15.

In April of 2022, Anthony Thorpe renewed his lease agreement

with Defendants to rent unit A-24.  The lease agreement required

tenants to list all other occupants of the apartment.  The lease

stated that persons not listed in the agreement may not occupy the

apartment.[3]  Defendants did not actively search for unauthorized

occupants; they relied upon the resident to "live up to their part

of the signed agreement."  Erwin Dep. 145:21-146:2 (Apr. 25, 2025),

ECF No. 52-1 ("Erwin 2025 Dep").

Kevin Ford lived with Thorpe in unit A-24 for approximately

150 consecutive days between April 2022 and October 2022.[4]  Thorpe

did not list Ford as an occupant of the Property in the lease

agreement.  Thorpe did tell Calloway Barnes, the Property's

maintenance supervisor, that he was "going to end up having a new

roommate."  Thorpe Dep. 163:14-22, ECF No. 61.  Further, Barnes

knew that Ford had moved in because Barnes went to the apartment

---

[3] Section 2 of the Lease Agreement states: "No one else may occupy the
apartment. Persons not listed above must not stay in the apartment for
more than 7 consecutive days without our prior written consent, and no
more than twice that many days in any one month."  Defs'. Mot. Summ. J.
Ex. B, Apartment Lease Contract § 2, ECF No. 52-2.

[4] There is some confusion in the parties' briefing about whether Ford
and Thorpe resided in unit A-23 or A-24. The record clearly reflects
that Ford lived with Thorpe in unit A-24.

to do some work and Ford was present, but Thorpe was not. *Id*. at 145:10-146:11.

A fire occurred in Building A of the Property in October of 2022. According to Plaintiff's experts, the fire originated in the kitchen of unit A-23 and spread to unit A-24 because a sprinkler in the kitchen of unit A-23 was not operating as intended. Hagan Report 5; Gorbett Report 29. Plaintiff's experts further opine that the sprinkler's ineffectiveness was likely the result of the sprinkler being painted or loaded. Hagan Report 5; Gorbett Report 29. Kevin Ford died in the fire.

Plaintiff, the administrator of Ford's estate, asserts negligence claims against Defendants based on Ford's death, asserts that Defendants' negligence caused Ford's death and pre-death pain and suffering. Plaintiff also seeks punitive damages under O.C.G.A. § 15-12-5.1. To support these claims, Plaintiff contends that Defendants were negligent in their inspection, testing, repair, and maintenance of the sprinkler system, as well as their failure to warn of the dangers related to these failures.[5]

C.  Discussion

Defendants seek summary judgment on the following issues: (1) whether they breached any legal duty to Ford as an occupant of the

---

[5] Plaintiff initially alleged that Defendants negligently installed the sprinkler system. In her response to Defendants' summary judgment motion, she abandoned that allegation, so she may not pursue negligence claims based on negligent installation.

Property and (2) whether they were negligent regarding the
inspection and testing of the sprinkler system.

            *1.    The Effect of Ford's Legal Status on Defendant's
                  Legal Duty Owed to Him*

    Defendants argue that Ford was a "trespasser" as a matter of
law within the meaning of Georgia's general premises liability
statute, O.C.G.A. § 51-3-1 *et seq.*  Under that statute, the
applicable standard of care depends on whether Ford is categorized
as an invitee, a licensee, or a trespasser under O.C.G.A. §§ 51-
3-1, 51-3-2, and 51-3-3.  An owner of property owes a licensee or
trespasser a lower standard of care than it owes to an invitee.
*Compare* O.C.G.A. § 51-3-1 ("Where an owner or occupier of land, by
express or implied invitation, induces or leads others to come
upon his premises for any lawful purpose, he is liable in damages
to such persons for injuries caused by his failure to exercise
ordinary care in keeping the premises and approaches safe.") *with*
O.C.G.A. § 51-3-2(b) ("The owner of the premises is liable to a
licensee only for willful or wanton injury.") *and* O.C.G.A. § 51-
3-3(b) ("A lawful possessor of land owes no duty of care to a
trespasser except to refrain from causing a willful or wanton
injury.").  In support of their contention that Ford was a
trespasser, Defendants assert that they did not know Ford was
living in Thorpe's apartment, and they would have enforced the

13

policy banning any unlisted occupants from residing on the Property had they known of Ford's presence.

Plaintiff responds that the source of Defendants' duty is not the general premises liability statute but the landlord-tenant statute, O.C.G.A. § 44-7-14.  That statute states that once the landlord fully parts with the possession and right of possession of a piece of property, "the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the *landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair*." O.C.G.A. § 44-7-14 (emphasis added).  "A landlord's liability to a third person who is injured on property which was relinquished by rental or under lease is determined by O.C.G.A. § 44-7-14." *Starks v. USG Real Est. Found. III, LLC,* 864 S.E.2d 621, 624 (Ga. Ct. App. 2021) (quoting *Colquitt v. Rowland*, 463 S.E.2d 491, 492 (Ga. 1995)).

The Georgia Supreme Court recently explained the distinction between the general premises liability statute and the landlord-tenant statute, which are "mutually exclusive sources of liability."  *Cham v. ECI Mgmt. Corp.*, 856 S.E.2d 267, 274 (Ga. 2021).  As the Georgia Supreme Court observed, a landlord's plot of land often "contains both areas that are possessed by the landlord (such as the common areas of an apartment complex) and

14

areas possessed by tenants (i.e., the apartments themselves)."
*Id.* at 273.  "In such cases, a landlord's tort liability for a
danger on its property is determined by the area where that danger
lurks."  *Id.*  "If the dangerous condition that ultimately causes
an injury is located in an area the landlord still possesses, then
liability under O.C.G.A. § 51-3-1 *et seq.* applies, and O.C.G.A.
§ 44-7-14 does not apply by its own terms."  *Id.*  "Conversely, if
the dangerous condition exists in an area possessed by the tenant
(such as in the tenant's residence), then a landlord's liability
derives from O.C.G.A. § 44-7-14 and not from O.C.G.A. § 51-3-1."
*Id.*  In *Cham,* the plaintiff's claim was based on an injury that
occurred in the parking lot.  Since the parking lot was considered
a common area of the apartment complex, the source of the
defendant's liability was O.C.G.A. § 51-3-1 *et seq.*  *Id.* at 276.

Here, Plaintiff produced evidence that the dangerous
condition that caused Ford's injury, unlike the parking lot in
*Cham*, originated in a tenant-possessed area, not a common area
possessed by the landlord.  It is undisputed that Defendants leased
units A-23 and A-24 to tenants and that Ford died in apartment A-
24 because of a fire there.  Defendants presented no evidence that
the cause of Ford's injury originated in a common area and no
authority establishing that the general premises liability statute
applies under the circumstances presented here.  *Cf. id.* at 275
(criticizing *Brown v. Clay*, 305 S.E.2d 367 (Ga. Ct. App. 1983) for

deciding that the tenant's injured guest was a "licensee" who could not recover under the general premises liability statute without first determining whether the cause of the guest's injury was in an area possessed by the tenant or an area possessed by the landlord).    Accordingly, Defendants' "liability derives from O.C.G.A. § 44-7-14 and not from O.C.G.A. § 51-3-1."  *Id.* at 273.

The Georgia Supreme Court explained that for claims under O.C.G.A. § 44-7-14, it is not necessary to decide whether the injured person was a "licensee" or "invitee"—the only question is whether the landlord is liable for failing to keep the premises in repair.  *Id.* (citing *Crook v. Foster*, 83 S.E. 670 (Ga. 1914)). The Georgia Supreme Court further noted that in evaluating an out-of-possession landlord's liability to a tenant's guests under O.C.G.A. § 44-7-14, the tenant's guests stand in the tenant's shoes.  *Id.* at 274 (discussing *Crossgrove v. Atl. Coast Line R. Co.*, 118. S.E. 694 (Ga. Ct. App. 1923), where the daughter of a railroad foreman who lived in the dwelling house furnished to the foreman as part of his employment was allowed to proceed under a landlord-tenant theory of liability).[6]  Defendants did not cite any authority establishing that a landlord cannot face liability under O.C.G.A. § 44-7-14 for the injuries of a person who was a

---

[6] Based on the Court's review, the language of the relevant landlord-tenant statute has not changed materially since at least 1895.  Ga. Civil Code of 1895 § 3118; Ga. Civil Code of 1910 § 3694; Ga. Code of 1933 § 61-112, all available at https://digitalcommons.law.uga.edu/ga_code/ [https://perma.cc/GD7A-DDFK].

guest in the tenant's apartment with permission of the tenant but in violation of the tenant's contractual agreement with the landlord.    So, even if Ford would have been considered a "trespasser" in a common area of the Property, that status does not bar Plaintiff's claims based on the cause of Ford's injuries originating in a tenant-possessed area.

Here, viewing the evidence in the light most favorable to Plaintiff, the kitchen sprinkler within unit A-23 failed to operate as intended, which allowed a fire that originated in A-23 to spread to A-24.    The evidence viewed in the light most favorable to Plaintiff would also permit a reasonable juror to conclude that the sprinkler in A-23 failed—and the fire spread to A-24—because of Defendants' failure to keep the premises in repair.    Therefore, the present record would permit a reasonable jury to find in favor of Plaintiff on her claims that are based on a violation of the duty imposed by O.C.G.A. § 44-7-14.    Accordingly, Defendants' motion for partial summary judgment based on Ford's legal status as an alleged trespasser (ECF No. 51) is denied.[7]

---

[7] Although unnecessary to this ruling, the Court observes that genuine factual disputes exist as to whether Ford was a trespasser even if the owner premises liability statute applied.  While the lease required the named tenant to list other co-tenants, the failure to do so does not automatically convert someone who the landlord knows is occupying the premises to a trespasser. *See Cham*, 856 S.E.2d at 278.

*2.    Negligent Inspection and Negligent Testing*

Defendants contend that they are entitled to summary judgment on any claims premised on negligent inspection and negligent testing because Defendants contracted with licensed professionals to conduct a full review of the fire containment system on an annual basis.    As discussed above, Plaintiff's claims under O.C.G.A. § 44-7-14 are for "damages arising from [Defendants'] failure to keep the premises in repair."    Plaintiff does not assert separate causes of action for "negligent inspection" or "negligent testing."    Rather, Plaintiff contends that Defendants' inadequate inspection, testing, and repair of the sprinkler system—taken all together—would permit a reasonable juror to find that Defendants failed to keep the premises in repair.    Although evidence of Defendants' inspection and testing of the sprinkler system may not be dispositive of the "failure to keep in repair" claim, it is certainly relevant.

In response to Defendants' argument, Plaintiff points to evidence that after Acom inspected the apartments and submitted a proposal to Defendants to replace the painted and loaded sprinklers in unit A-23, Defendants elected to have their own maintenance personnel "identify" and "clean" the sprinklers that were either painted or loaded.    Erwin Dep. 109:7-10, ECF No. 68-1.    Any such work by the Property's maintenance personnel was the last work performed on the sprinkler system in unit A-23 before the fire.

18

Defendants did not point to evidence that Defendants engaged qualified individuals to conduct a follow-up inspection before the fire to ensure that its maintenance personnel fixed the problems that Acom identified. And there is evidence that some sprinklers, which had been flagged as needing repair, failed on the day of the fire—suggesting that they had not actually been fixed.

Accordingly, a genuine factual dispute exists as to Plaintiff's claims under O.C.G.A. § 44-7-14, and Plaintiff shall be permitted to support this claim by introducing evidence of Defendants' conduct with regards to the sprinklers, including evidence of inadequate inspection and testing the sprinkler system in unit A-23. Similarly, a genuine factual dispute exists as to whether Defendants negligently failed to warn of the dangers associated with their failure to keep the premises in repair. The Court thus denies Defendants' summary judgment motion on the issues of negligent inspection, negligent testing, and any associated failure to warn of the dangers related to negligent inspection and testing (ECF No. 49).

## CONCLUSION

The Court denies Defendants' motions to exclude the testimony of Robert Bell, Frank Hagan, and Gregory Gorbett (ECF Nos. 53, 54, & 55). Defendants' partial summary judgment motions (ECF Nos. 49 & 51) are also denied.

19

20

IT IS SO ORDERED, this 7th day of October, 2025.

S/Clay D. Land

CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA