```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION
```

| | |
|---|---|
| KIMORA WASHINGTON, as administrator of the Estate of KEVIN FORD, | * * |
| Plaintiff, | * |
| vs. | *   CASE NO. 4:24-cv-81-CDL |
| GWR MANAGEMENT, LLC and GWR FLAT ROCK PARTNERS, LLC, | * * |
| Defendants. | * |

## O R D E R

Defendants own and manage an apartment complex called The Trails at Flat Rock in Columbus, Georgia. In October of 2022, a fire occurred in Building A of the apartment complex. Kevin Ford, who was staying in unit A-24 with tenant Anthony Thorpe, died in the fire. Plaintiff, the administrator of Ford's estate, asserts negligence claims against Defendants based on Ford's death, alleging that Defendants' negligence caused Ford's death and pre-death pain and suffering. Plaintiff intends to support these claims with the expert testimony of Kevin Foster and Lisa Detter-Hoskin. Defendants argue that the testimony of these two experts should be excluded. For the reasons explained in the remainder of this Order, the Court denies Defendants' motions to exclude the testimony of Foster and Detter-Hoskin. (ECF Nos. 56 & 57).

DISCUSSION

**I.   Standard for the Admissibility of Expert Opinions**

Under Federal Rule of Evidence 702, the Court must serve as the gatekeeper "to keep out irrelevant or unreliable expert testimony." *United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145 (1999) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993)). "This gatekeeping role, however, 'is not intended to supplant the adversary system or the role of the jury: "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."'" *Id.* at 1282 (quoting *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999)).

In evaluating the admissibility of expert testimony under Rule 702, the Court must consider whether "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable . . .; and (3) the testimony assists the trier of fact . . . to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Many cases, particularly those involving opinion testimony that relies

2

on the scientific method, cite the traditional factors that courts should consider when determining whether an expert's methodology is sufficiently reliable: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential error rate of the technique; and (4) whether the technique is generally accepted in the scientific community." *Adams v. Lab'y Corp. of Am.*, 760 F.3d 1322, 1327 (11th Cir. 2014) (per curiam). These factors, of course, represent a non-exhaustive list and "do *not* constitute a definitive checklist or test." *Id.* (quoting *Kumho Tire*, 526 U.S. at 150). "While those factors may help in assessing the reliability of scientific or experience-based expert testimony, the district court's 'gatekeeping inquiry must be tied to the facts of a particular case.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 150). To allow the testimony to be considered by the jury, the Court must find that "it is properly grounded, well-reasoned, and not speculative." *Frazier*, 387 F.3d at 1262 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments).

**II.  Defendants' Motion to Exclude Kevin Foster**

Defendants seek to exclude the testimony of Plaintiff's burn expert, Dr. Kevin Foster. Foster is the Director of Burn Services at the Diane & Bruce Halle Arizona Burn Center Valleywise Health. Defs.' Mot. to Exclude Foster Ex. A, Foster Report 2, ECF No. 57-1 ("Foster Report"). Foster, a medical doctor who has specialized

in burn care since 1999, opines that Ford's death was caused by a combination of smoke inhalation and burn injury, as opposed to solely smoke inhalation injury. *Id.* at 7. Foster also concluded that Ford suffered conscious pain and suffering from his burns before his death. *Id.* at 8. Foster stated that he made these conclusions to a reasonable degree of medical certainty based on his education, training, and experience. *Id.* Defendants do not argue that Foster lacks the education, training and skill to reach an opinion on Ford's cause of death and whether he experienced conscious pain and suffering, but they do assert that his testimony should be excluded as unreliable.

Defendants contend that Foster's testimony should be excluded as unreliable because Foster's opinions are speculative and not based on reliable principles that would assist the trier of fact. Specifically, Defendants argue that Foster failed to use reliable principles in arriving at his conclusion that Ford endured conscious pain and suffering because in forming his opinions Foster made improper assumptions about an unlocked window lock in Ford's bedroom window and Ford's body position at the time of his death. Defendants also contend that Foster did not adequately account for Ford's blood alcohol content at the time of his death.

To prepare his report, Foster relied on the Georgia Bureau of Investigation's ("GBI") autopsy report and photographs, the Muscogee County Coroner's Report, Columbus Fire Department and

4

Columbus Police Department reports and photographs, Thorpe's deposition, and other photographs from the fire scene. *Id.* at 2. Defendants do not appear to challenge Foster's basic *methodology*, which was to consider all the medical records, photographs, and reports available to him and determine Ford's cause of death based on that information and his training, experience, and skill as a burn care physician. Rather, Defendants challenge Foster's *conclusions*—including his conclusion that Ford was conscious at the time of the fire and experienced pain and suffering due to burns before he died. According to Defendants, Foster misinterpreted the evidence and reached the wrong conclusions about whether Ford was asleep at the time of the fire. Foster, though, explained why he interpreted the evidence as he did and how he reached his conclusions that Ford was conscious and trying to escape the fire when he suffered burns. The Court finds that Defendants' criticisms of Foster's testimony go to its weight, not its admissibility. Thus, based on the present record, the Court does not find that Foster's methodology was unreliable.

Defendants also criticize Foster's analysis as a "cut and paste job" because Foster mistakenly referred to a "Mr. Noble" in two places in his report on Ford. *Id.* at 6-7. Defendants argue that these mistakes show that Foster did not consider whether Ford suffered conscious pain and suffering. As Defendants acknowledge, though, Foster explained during his deposition that he made typos

5

in his report but that he reached the conclusions as to Ford based on the evidence he considered. The Court declines to exclude Foster's testimony because of the mistakes in his report. Defendants may certainly address these mistakes and any other perceived weaknesses in Foster's analysis through a vigorous cross examination. For these reasons, Defendants' motion to exclude Foster (ECF No. 57) is denied.

**III. Defendants' Motion to Exclude Lisa Detter-Hoskin**

Defendants also seek to exclude the testimony of Plaintiff's rebuttal expert, Lisa Detter-Hoskin. Plaintiff hired Detter-Hoskin to rebut certain opinions offered by Richard Jones, Defendants' fire investigation expert who evaluated the origin and cause investigation conducted by Plaintiff's expert, Keith Bell. Defendants argue that Detter-Hoskin's opinions are outside the scope of permitted rebuttal testimony under the Federal Rules of Civil Procedure. A party may file a rebuttal expert report "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). Neither the Rules nor the Eleventh Circuit has defined the scope of what is considered the "same" subject matter; however, "[t]he purpose of rebuttal evidence is '"to explain, repel, counteract, or disprove the evidence of the adverse party."'" *United States v. Gold*, 743 F.2d 800, 818 (11th

6

Cir. 1984) (quoting *United States v. Delk*, 586 F.2d 513, 516 (5th Cir. 1978)).

Courts have disallowed the use of a rebuttal expert if the expert's testimony is an attempt to introduce evidence more properly as part of a party's case-in-chief. *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1515 (10th Cir. 1990). "[R]ebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006). But "[t]he fact that testimony would have been more proper for the case-in-chief does not preclude the testimony if it is proper both in the case-in-chief and in the rebuttal." *United States v. Luschen*, 614 F.2d. 1164, 1170 (8th Cir. 1980). A rebuttal report may not advance a completely new legal theory, but courts must examine the primary expert reports to determine whether the rebuttal report is truly "new" or merely uses different terminology to address issues that were raised in the primary expert reports. *103 Invs. I, L.P. v. Square D Co.*, 372 F.3d 1213, 1217-18 (10th Cir. 2004) (finding that a rebuttal report responded to the "thrust of" the primary experts' analyses and did "not represent a new theory").

Defendants hired Richard Jones to review the origin and cause investigation performed by Plaintiff's expert, Keith Bell. Defs.' Mot. to Exclude Detter-Hoskin Ex. A, Jones Report 4, ECF No. 56-2 ("Jones Report"). Jones opined that "[r]econstruction efforts

7

demonstrate that the damage to the backsplash [in the apartment where the fire allegedly started] was most likely the result of exposure to the burning potholder, which dropped down onto the range during the collapse of cabinetry and contents above." Jones Report 47. Jones also testified that he believed the damage to the range's backsplash and the back part of the range was caused by either direct flame impingement, radiant heat, or conductive heat coming from the left side of the range. Jones Dep. 211:2-11, ECF No. 48-6. Plaintiff then hired Lisa Detter-Hoskin as a rebuttal expert "to assess the opinions offered by fire investigator Rick Jones regarding the cause of the damage to the back plate of the cooking range." Defs.' Mot. to Exclude Detter-Hoskin Ex. B, Detter-Hoskin Report 5, ECF No. 56-3 ("Detter-Hoskin Report").

Defendants argue that Detter-Hoskin's testimony does not rebut Jones's opinions as to the cause of the damage to the backplate of the cooking range because Jones did not "opine as to what caused the damage to the back plate of the range." Defs.' Mot. to Exclude Detter-Hoskin 6, ECF No. 56-1. As discussed above, though, he did.[1] Jones further concluded that the fire originated outside the kitchen of A-23, that Bell did not consider the role

---

[1] Based on the Court's review, it appears that Jones used the term "backsplash" for the same area of the range that Detter-Hoskin called the "back plate."

8

that flame impingement, radiant heat transfer, and drop down had in the fire's development, and that the backsplash and back part of the range were damaged either by direct flame impingement, radiant heat, or conductive heat. Jones Report 74, 76; Jones Dep. 211:2-11. After examining and analyzing materials from the kitchen of unit A-23, Detter-Hoskin opined that "the damage to the cooking range back plate and aluminum backsplash was not the result of the direct flame impingement, radiant heat, or conductive heat from the fall down debris located to the left of the stove." Detter-Hoskin Report 6. Thus, Detter-Hoskin's conclusions directly contradict Jones's opinions as to the cause of the damage to the stove backsplash and back part of the range detailed in Jones's report and deposition. Accordingly, the Court finds that Detter-Hoskin is a proper rebuttal expert under Rule (26)(a)(2)(D)(ii). Defendants' motion to exclude Detter-Hoskin (ECF No. 56) is denied.

CONCLUSION

For the reasons explained above, the Court denies Defendants' motions to exclude the testimony of Kevin Foster and Lisa Detter-Hoskin (ECF Nos. 56 & 57).

IT IS SO ORDERED, this 21st day of October, 2025.

                                          S/Clay D. Land
                                          CLAY D. LAND
                                          U.S. DISTRICT COURT JUDGE
                                          MIDDLE DISTRICT OF GEORGIA